UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONNY ALEXANDER RAMIREZ,<br>Plaintiff,<br>v.<br>FRANK BISGNANO, Commissioner of Social Security<br>Defendant. | Case No. 1:25-cv-00134-JLT-FJS<br>FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED AND THE FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY BE AFFIRMED<br>(ECF No. 13)<br><u>FOURTEEN (14) DAY DEADLINE</u> |

On June 27, 2025, Plaintiff Sonny Alexander Ramirez ("Plaintiff"), moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and the court's scheduling order (ECF No. 10).[1] (*See generally* ECF No. 13.) In that motion, Plaintiff seeks judicial review of the Commissioner of Social Security's ("Commissioner") order denying his application for social security disability insurance and supplemental security income benefits for lack of disability. (ECF No. 1.)

[1] The matter was automatically referred to the undersigned for the preparation of findings and recommendations pursuant to Local Rule 302(c)(15).

# I. BACKGROUND

Plaintiff was born in 1985. (Administrative Record ("AR") 311) Plaintiff was thirty-five when he filed the application under review. (AR 311.) Plaintiff completed education through the 9th grade. (AR 82.) Plaintiff's work history is sporadic. (*See* AR at 353, 354, 485, 524.)

Plaintiff alleges that his disability began on March 16, 2019. (AR 19.) Plaintiff's application was denied on April 8, 2022, and again upon reconsideration on June 3, 2023. (AR 19.) Thereafter, on March 6, 2024, Plaintiff amended the onset date of his disability to June 7, 2021, which coincides with his application for supplemental security income. (AR 19.) Accordingly, the administrative law judge limited his review of the Commissioner's decision denying Plaintiff's application for supplemental security income under section 1614(a)(3)(A) of the Social Security Act to the period beginning on March 16, 2019, and ending on April 12, 2024. (AR 20.) On April 12, 2024, the administrative law judge denied Plaintiff's claim. (AR 19.) This appeal followed. In this appeal, Plaintiff asks this court to reverse the Commissioner's decision and remand the matter for further administrative proceedings. (ECF No. 13 at 16.)

## A. Relevant Evidence of Record[2]

On December 27, 2021, Plaintiff submitted for intake. (AR 550.) At the intake, Plaintiff reported he experiences hallucinations all the time, feels depressed when thinking about the past, cannot sleep at night, and needs a higher dosage from his current medication. (AR 551.)

On February 4, 2022, Plaintiff was given a comprehensive psychiatric medical evaluation at the request of the Department of Social Services. At the evaluation, Plaintiff reported that he: has nightmares and frequent intrusive thoughts about a shooting he witnessed, is hypervigilant when he leaves the house, hears voices, and feels like there is an antenna in his head. (AR 554.) Plaintiff indicated that his daily activities include doing household chores, providing transport to his kids, making simple meals for himself, and attending church when possible. (AR 554.) Dr. Charles DeBattista observed that Plaintiff's mental status was "pleasant and cooperative … [with] no bizarre mannerisms or unusual behaviors." (AR 555.) Dr. DeBattista further noted that

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

Plaintiff's thought content was "notable for the auditory hallucinations, ideas of reference and paranoid ideations and also thought insertions," but that Plaintiff's intellectual functioning was "alert and oriented to time, place and person." (AR 555.) Dr. DeBattista's functional assessment indicated that Plaintiff's ability to work a full day or week, relate to coworkers and the public, and associate with day-to-day work activity was moderately impaired. (AR 556.) Plaintiff's ability to maintain regular attendance was assessed as markedly impaired. (AR 556.) Comparatively, Plaintiff's ability to maintain concentration and attention, remember simple instructions, accept instructions from supervisors, or perform work activities without additional special supervision, was either not impaired or only mildly impaired. (AR 556.)

On June 6, 2022, Plaintiff was given a psychiatric diagnostic evaluation with medical services. (AR 994.) The resulting medical report notes that Plaintiff presented to the clinic "for an initial evaluation and chief complaint of establishing care, wanting to get on disability … [and that Plaintiff] was possibly exaggerating symptoms in an effort to obtain some secondary gain." (AR 997.) Nonetheless, the examiner noted that Plaintiff complained of auditory/visual hallucinations that were "constant, never changing, not going away," but appeared to have normal cognitive function, judgment, insight, and a logical thought process. (*Id*.)

On July 24, 2023, Plaintiff appeared for psychotherapy counseling. (AR 1017.) During the exam, Plaintiff denied hallucinations and the attending medical professional did not find evidence of hallucinations in Plaintiff's behavior. (AR 1019.)

On September 19, 2023, Plaintiff appeared for medication management with psychotherapy. (AR 1021.) Plaintiff reported that his mood was "sad and low on most days." (*Id*.) The report states that Plaintiff's "thought process … show[ed] little spontaneity" and that "thought content revealed no delusion[s], hallucinations or preoccupation with traumatic flashbacks." (*Id*.) The report did not indicate Plaintiff experienced any "distractibility," or "grandiosity or morbid preoccupation". (AR 1021.)

On October 05, 2023, Plaintiff appeared for medication management with psychotherapy and was not described as having thought content that revealed "hallucinations or preoccupation

with [v]iolent themes or flashbacks." (AR 1027.) Additional notes indicate that Plaintiff's cognition "seems intact, memory function is good, concentration abilities are good." (*Id*.)

B. Administrative Proceeding

*1. Plaintiff's Testimony*

At the March 24, 2024, hearing, Plaintiff testified that despite seeking treatment and enjoying visitation rights with his children, he struggles to interact with others, feels sad "all the time," and has previously attempted to suicide. (AR 83.) Plaintiff further indicates that he generally struggles to stay on task and remember things, such as, when his medical appointments are or what medication to take. (AR 68, 87.) Yet, Plaintiff also testified that he "always takes his medication" and sees his doctor about every "two weeks to a month." (AR 85.) In addition, Plaintiff notes that he "hears voices and sees shadows." (AR 85-86.) And Plaintiff indicates that he has been struggling with "bad" heart and back pain, high blood pressure, weight gain, and mobility issues. (AR 88-92.)

Plaintiff described daily activities such as preparing microwaveable meals for his son, grocery shopping, and modest chores, but clarified that he needs to "take breaks." (AR 92, 98.) Plaintiff testified that he does not smoke, drink, or use any other drugs. (AR 92.) Lastly, Plaintiff states that he relies heavily on his four children, particularly his fourteen (14) year old son who lives with him, to help Plaintiff remember things or go out grocery shopping. (AR 97.)

*2. Vocational Expert Testimony*

The administrative law judge asked the vocational expert whether there was any work available to "an individual with [Plaintiff's] age and education, with no past work [experience] … [and who] is limited to simple routine tasks, occasional changes to a work routine, incidental, meaning less than occasional, public contact, occasional interaction with supervisors and coworkers," and did not have any exertional limitations. (AR 99.) In response, the vocational expert indicated that the hypothetical individual would be employable as: (1) a hand packager and that there are an estimated 160,000 jobs nationally; (2) cleaner II and that there are an estimated 130,000 jobs nationally; and (3) an industrial cleaner and that there are an estimated 320,000 jobs nationally. (*Id*.)

In a second hypothetical, the vocational expert considered whether there were jobs available to an individual "limited to frequently climbing, scooping, kneeling, couching, and crawling, simple routine tasks, occasional interaction with supervisors and coworkers, no collaborative work on the team, and no production pace work." (AR 100.) The vocational expert indicated that the same types of jobs listed in the first hypothetical would be available, even with these additional limitations. (*Id.*)

In a third hypothetical, the vocational expert considered whether work would be available to the individual hypothesized in example two if their abilities were reduced to "light RSV [sic.][3] with frequent climbing, scooping kneeling, crouching, and crawling, and the remaining non-exertional of simple routine tasks, occasional changes to work routine, incidental, less than occasional public contact, occasional interaction with supervisors and coworkers … [with] no collaborative work on a team, and no production paced work." (*Id.*) Accordingly, the vocational expert indicated that positions such as a router, small products assembler, and mail clerk were available occupations for an individual with such limitations. (*Id.* at 101.)

Lastly, the vocational expert considered whether an individual could obtain competitive employment with the limitations indicated in hypotheticals one through three with an added inability to maintain a normal workday or work week twenty percent of the time. (*Id.*) The vocational expert opined that this additional limitation would eliminate all competitive employment per the Dictionary of Occupational Titles.

3. *<u>The Administrative Law Judge's Decision</u>*

The administrative law judge conducted the five-step analysis set forth in 20 C.F.R § 416.920. (AR 22–36.) At step one, the administrative law judge found that Plaintiff had not engaged in substantial gainful activity since June 7, 2021. (AR 22.)

At step two, Plaintiff was found to have the following severe impairments: (1) degenerative disc disease of the cervical, thoracic and lumbar spines; (2) obesity; (3) posttraumatic stress disorder (PTSD), (4) depression; (5) antisocial personality disorder; and (6)

---

[3] "RSV" is a transcription error from the September 20, 2018, hearing. The Vocational Expert was in this instance testifying to Plaintiff's specific vocational profile ("SVP"). *See* AR 34.

schizophrenia. (AR 22-23.) Furthermore, the administrative law judge noted several instances of Plaintiff's complaints of chest pain or shortness of breath from June 2021 to August 2023, but that these conditions were "either not sufficient, or established as an impairment [in Plaintiff's medical records], … or not shown to be severe durationally" to effect Plaintiff's work activities "more than minimally." (AR 23.) Likewise, the administrative law judge did not find Plaintiff's complaints of migraines persuasive due to there being no record of treatment notes for the condition. (AR 23.) Moreover, the administrative law judge did not find that the conditions as a whole were "severe enough to preclude work-related activities or satisfy the durational requirements for the purpose of disability." (AR 24.)

At step three, the administrative law judge found that the Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" (*Id.*) In reviewing the "paragraph B criteria," the administrative law judge did not find that Plaintiff's mental impairments caused at least two marked limitations or one extreme limitation. (AR 24-27.) Furthermore, Plaintiff did not meet the "paragraph C" criteria because the "evidence fail[ed] to establish a serious and persistent depressive, bipolar, schizophrenia spectrum, trauma, stressors or related disorder of at least two years duration." (*Id.*)

Although the administrative law judge recognized that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's statements regarding the "intensity, persistence and limiting effects of these symptoms" were ultimately inconsistent with the medical and other evidence in the record. (AR 29.) The decision further highlights "significant gaps in the [Plaintiff's] history of treatment" and daily activities that are inconsistent with the type of complaints and limitations Plaintiff complains of. (*Id.*)

Upon review of Dr. DeBattista's psychiatric evaluation from February 2022, the administrative law judge found that the evaluation was unpersuasive because it was (1) inconsistent with the treatment record, (2) Plaintiff acknowledged "that medications had been helpful in the past," and (3) that "he had been doing better and it had been years since he needed mental health treatment in July 2023." (AR 34.)

At step four, the administrative law judge found that Plaintiff has the "residual functional capacity to perform medium work with the following modifications: frequent climbing; stooping; kneeling; crouching and crawling; simple; routine tasks; occasional public contact; occasional interaction with supervisors and coworkers; no collaborative work on a team; and no production paced work." (*Id.* at 35.)

Plaintiff sought review of this decision before the Appeals Council but was denied review on December 10, 2024. (AR 1-6.) Based on this denial, the administrative law judge's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

## II. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [his or her] past relevant work. If so, the

> claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity. . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see*, *e.g*., 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for supplemental security income claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id*. (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

B. Scope of Review

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id*.; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa*

*v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). “Rather, a court must ‘consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner’s] conclusion.’” *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts “may not reverse an ALJ’s decision on account of an error that is harmless.” *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm’r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error “exists when it is clear from the record that ‘the ALJ’s error was inconsequential to the ultimate non-disability determination.’” *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). “[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency’s determination.” *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## III. DISCUSSION

The court disagrees with Plaintiff’s contention that the administrative law judge did not appropriately evaluate the record as a whole. (ECF No. 13 at 8.) “In interpreting the evidence and developing the record, the Administrative Law Judge does not need to discuss every piece of evidence.” *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotation omitted). The administrative law judge’s decision recognizes that Plaintiff has some work limitations; however, the administrative law judge weighs the relevant evidence appropriately and discredits limitations that are inconsistent with the objective medical evidence. (*See, e.g.*, AR 29); *see also Schuler v. Saul*, No. 1:18-CV-0884-BAM, 2020 WL 2744577, at *14 (E.D. Cal. May 27, 2020) (relying on similar reasoning). Therefore, the administrative law judge’s analysis of the record applied the proper legal standards and is supported by substantial evidence. *See, e.g., Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 511 (9th Cir. 1987) (explaining that the Secretary may resolve disputes in contradicted medical evidence).

Plaintiff’s primary argument is that the administrative law judge’s review of his medical history was “cursory and conclusory” and that it “belies a fundamental understanding of the nature of mental illness.” (ECF No. 13 at 10.) Specifically, Plaintiff argues that because “[c]ycles of improvement and debilitating symptoms are a common occurrence” in the context of mental

health, the administrative law judge improperly focused on a "few isolated instances of improvement" to justify her findings. (*Id.*) Plaintiff also contends that the administrative law judge erred in her assessment of the medical opinion of psychiatric consultative examiner Dr. DeBattista. (ECF No. 13 at 8.) Plaintiff avers that substantial evidence did not support the administrative law judge's ultimate determination of Plaintiff's residual functional capacity. (ECF No. 13 at 8.)

The Commissioner responds that the administrative law judge properly weighed Dr. DeBattista's opinion against Plaintiff's broader treatment history, "multiple records suggesting that Plaintiff was exaggerating his symptoms," and the opinions of the State agency consulting psychologists. (ECF No. 15 at 4-5.) The Commissioner further highlights that the administrative law judge did not decide that Plaintiff was symptom free, but rather, "not as limited as Dr. DeBattista [indicated]." (ECF No. 15 at 5.) Accordingly, the Commissioner concluded that substantial evidence supported the administrative law judge's determination that Plaintiff had not been under a disability from June 7, 2021, to April 12, 2024.

For the reasons explained further below, the court finds that substantial evidence supports the administrative law judge's decision. Therefore, the court recommends that the final decision of the Commissioner of Social Security be affirmed and the Plaintiff's motion for summary judgment be denied.

A. <u>The Administrative Law Judge's Treatment of Dr. DeBattista was Not Erroneous.</u>

The agency's regulations concerning how administrative law judges must evaluate medical opinions for claims filed on or after March 27, 2017, govern Plaintiff's claim for supplemental security income. *See* 20 C.F.R. § 416.920c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. § 416.920c(b)(2). And although the regulations eliminate (1) the prior "physician hierarchy," (2) deference to specific medical opinions, and (3) assigning "weight" to a medical opinion, based on who is opining, administrative law judges must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. § 416.920c(a)–(b).

The Ninth Circuit has issued the following guidance for judges considering the opinions of physicians:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520(c)(a) ("we will not defer or give any specific evidentiary weight, including controlling weight to any medical opinions(s) … including those from your medical sources.") Our requirement that [administrative law judges] provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray,* 722 F.2d at 501-02, is likewise incompatible with the revised regulations. Insisting that [administrative law judges] provide more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources – contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

In combination with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)); *see also id*. § 416.920c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id.* at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also id.* § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). See also *Id.* § 416.920c(c)(2). As the Ninth Circuit explained:

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* § 404.1520c(c)(3)(i)-v. However, the ALJ no longer needs to make specific findings regarding these relationship factors.

*Woods,* 32 F.4th at 792; *see also* 20 C.F.R. § 416.920c(c)(3). "A discussion of relationship factors

may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id.* (quoting § 404.1520c(b)(3)); *see also id.* § 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors." *Id.* Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the administrative law judge need not provide an analysis of the evidence in his decision. *See* 20 C.F.R. § 415.920b(c)(3).

With these legal standards in mind, the court reviews the weight given to Dr. DeBattista's opinion by evaluating the supportability and consistency of the administrative law judge's finding in turn.

*1. Supportability*

First, Plaintiff argues that the administrative law judge's finding that Dr. DeBattista's opinion was "unpersuasive" demonstrates error because "it belies a fundamental understanding of the nature of mental illness … [in that] cycles of improvement and debilitating symptoms are a common occurrence." (ECF No. 13 at 10.) In response, the Commissioner argues that the administrative law judge reasonably determined that "Plaintiff's conditions did not impose the degree of limitation that Dr. DeBattista [indicated]." (*See* ECF No. 15 at 6); *see also* (AR 34 (explaining that Dr. DeBattista's opinion "was not well supported by an explanation as it appeared the examiner only reviewed one treatment note and primarily based his opinion on the claimant's reported history and the clinical findings of his own one-time evaluation").)

"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Plaintiff correctly notes that the administrative law judge "must not cherry pick instances of no or low symptomology without considering the context, such as instances of high symptomology." *Parker v. Bisignano*, No. 1:24-CV-01282-JLT-FRS (SKO), 2026 WL 292495, at *8 (E.D. Cal. Feb. 4, 2026) (citing *Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998)). Nonetheless, review of the opinion demonstrates that the administrative law judge did consider Plaintiff's broader treatment and symptomology history in rendering her decision. (*See* AR 24-34.)

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Ford*, 950 F.3d at 1154 (citing *Thomas v. Barnhart*, 278 F.3d 947, 95 (9th Cir. 2002)). There is substantial evidence in the record to support the diminished weight the administrative law judge assigned to Dr. DeBattista's opinion. The administrative law judge explained that Dr. DeBattista's February 2022, evaluation of Plaintiff was unpersuasive because it was based on a single treatment note from April 2020, a single interaction with Plaintiff, and the Plaintiff's own testimony. (AR 34.) *See Mastromatteo v. Comm'r of Soc. Sec.*, No. 2:25-CV-00267-CKD, 2026 WL 686228 at *6 (E.D. Cal. Mar. 11, 2026) (finding administrative law judge did not err in deeming medical opinion unpersuasive where the record as a whole does not support doctor's opinion).

The administrative law judge further reasoned that Dr. DeBattista's reliance on a single treatment note in the administrative record from two years earlier diminished the persuasiveness of the doctor's opinion. (*See* AR 33-34); *see also Kitchen v. Kijakazi,* 82 F.4th 732, 740 (9th Cir. 2023) ("[s]upportability concerns how a medical source supports a medical opinion with relevant evidence") (cleaned up). Given Dr. DeBattista's failure to address the tension between (1) his determination that Plaintiff's limitations were more significant in degree, with (2) his other observations that Plaintiff had: a "pleasant and cooperative attitude; linear and goal-directed thought process … mostly euthymic mood; full range of affect; and adequate judgement," the administrative law judge reasonably afforded his medical opinion less weight. (AR 34.) For example, the administrative law judge opined that that Dr. DeBattista's opinion was "unpersuasive" as it was "inconsistent" with the larger treatment record evincing minimal treatment for physical impairments. (AR 29.) Examples include: (1) Plaintiff acknowledged "that medications had been helpful in the past," and (2) "he had been doing better and it had been years since he needed mental health treatment in July 2023." (AR 34.)

For the reasons above, the court finds that substantial evidence supports the administrative law judge's evaluation and application of Dr. DeBattista's opinion, in light of the whole record.

2. *Consistency*

Second, Plaintiff argues that the administrative law judge's decision failed to consider relevant evidence in analyzing the consistency of Dr. DeBattista's opinion. (ECF No. 15 at 3.) In Plaintiff's view, the administrative law judge "fails to engage in a meaningful … consistency analysis … by making broad reference to nearly one thousand pages spanning from Exhibit B10F through B17F without any pinpoint citations to identify what evidence supports her rejection of the disabling limitations" Dr. DeBattista identified. (ECF No. 13 at 14.)

In response, the Commissioner argues that the administrative law judge appropriately considered multiple records, including: (1) a note from November 2021, indicating a "rule out for malingering is strongly recommended," (2) a June 2022, psychiatric evaluation from Plaintiff's provider with fully normal findings, aside from Plaintiff's report of hallucinations, (3) Plaintiff's testimony in July 2023, that it had been years since he required mental health treatment other than medication, and (4) mental status examination from October 2023, where Plaintiff "appeared stable without delusions or hallucinations." (ECF No. 15 at 5.)

"The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). When the plain reading of the administrative law judge's decision indicates not that Dr. DeBattista's opinion was unsupported by a lack of evidence, but rather, that the broader treatment record is otherwise inconsistent with that opinion and then rules accordingly, the decision is legally sufficient. *See Parker,* 2026 WL 292495, at *7. A review of the larger record revealed that Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms, [were] inconsistent because treatment has been minimal for his physical impairment, and [Plaintiff] acknowledged improvement in his mental health symptoms." (*See* AR 29 (explaining that Exs. B13F, B14F, B16F, B17F contains no evidence of "treatment notes for emerging cardiac, pulmonary, or aortic pathology.")); *see also Ford,* 950 F.3d at 1156 (holding that "conflict between a treating physician's opinion and a claimant's activity level" supports finding the physician's opinion unpersuasive) (citations omitted). The administrative law judge further

reasoned that Plaintiff's testimony regarding daily activities and the "significant gaps" in Plaintiff's history of treatment were inconsistent with disabling symptoms. (AR 29, 30.)

The administrative law judge is not required to discuss every piece of evidence available in the record. *Howard ex rel. Wolff*, 341 F.3d at 1012. Further, contrary to Plaintiff's argument that the administrative law judge's discussion of Dr. DeBattista's opinion is "is legally insufficient and frustrates meaningful review," (ECF. 13 at 10), the identification of specific allegations, exhibits, and evidence contradicting those allegations, (*see, e.g.,* AR 33), permitted this court to conduct a meaningful evaluation of the administrative law judge's reasoning. *See Rounds v. Comm'r Soc. Sec. Admin.,* 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.") Moreover, the administrative law judge explicitly considered several notes from medication management with psychotherapy sessions: (1) Plaintiff's insistence on speaking with a different psychiatrist when advised of medication that had never been prescribed, (2) Plaintiff's denial of hallucinations during a medication management in December 2022, and (3) Plaintiff's description of auditory hallucinations that were not consistent with a primary psychotic disorder in February 2023. (AR 32.)

In sum, the court finds substantial evidence supports the administrative law judge's conclusions regarding the merit of Dr. DeBattista's opinion on Plaintiff's residual functioning capacity. Plaintiff may disagree with the ultimate decision, but where the administrative law judge's determination is a rational interpretation of the evidence, the court must uphold the decision. *See Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential").

B. Harmless Error Review

Generally, "[t]he court will not reverse an Administrative Law Judge's decision for harmless error, provided it is clear from the record that the Administrative Law Judge's error was inconsequential to the ultimate non-disability determination." *Tommasetti*, 533 F.3d at 1038. "Where a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate." *Wiley v. Colvin,* No. 15-1618, 2016 WL 8731434, at *3 (C.D. Cal. Mar. 18, 2016) *(citing Marsh v. Colvin,* 792 F.3d 1170, 1173

(9th Cir. 2015)).

Plaintiff argues that the administrative law judge's asserted errors were not harmless. (ECF No. 13 at 16.) In Plaintiff's view, had the administrative law judge "properly considered the opinion of Dr. DeBattista then a finding of disability would have been directed based on vocational expert testimony." (*Id.*) The court recognizes that if the administrative law judge had found Dr. DeBattista's medical opinion to be more persuasive, then it is more likely that Plaintiff would have received a different non-disability/disability determination. But this was not a situation where the administrative law judge failed to address or even consider relevant evidence. *See Alawad v. Kijakazi,* No. 2:22-CV-0931 DB, 2023 WL 6130129, at *4 (E.D. Cal. Sept. 18, 2023) (finding administrative law judge erred in not evaluating listing describing plaintiff's disorder.) Regardless of Dr. DeBattista's opinion, the administrative law judge could not fully adopt all of the limitations included in the vocational expert's opinion because it included "limitations not addressed by the [Dictionary of Occupational Titles] such as social interactions, changes in a workplace setting, production pace and collaboration with others which are based upon his education, training, and experience." (*See* AR 36.) Moreover, the mental assessments of the Social Security Agency's consultants and subsequent treatment history gave the administrative law judge substantial evidence for Plaintiff's ultimate non-disability determination. *See Biestek,* 587 at 103 (substantial evidence is "more than a mere scintilla … it means and it means only – such evidence as a reasonable mind might accept as adequate to support a conclusion.") Accordingly, the court finds that Plaintiff is not entitled to summary judgment based on the weight given to Dr. DeBattista's opinion.

C. FINDINGS AND RECOMMENDATIONS

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

(1) Plaintiff's motion for summary judgment, (ECF No. 13), be DENIED;

(2) The final decision of the Commissioner of Social Security be AFFIRMED; and

(3) The Clerk of the Court be DIRECTED to enter judgment in favor of Defendant Frank J. Bisignano, Commissioner of Social Security and against Plaintiff Sonny Alexander Ramirez, and to CLOSE this action.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l)(B). Within fourteen (14) days after being served with a copy of these findings and recommendations, a party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Objections, if any, shall not exceed fifteen (15) pages. Any pages filed in excess of the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the district court's judgment.

IT IS SO ORDERED.

Dated: **September 11, 2026**

UNITED STATES MAGISTRATE JUDGE